UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KELVIN WAYNE DIXON,

      Plaintiff,

           v.

DANIELLE HAMLIN, KRISTIN
PARTAIN, CENTURION HEALTH
SERVICES, WARDEN, and STEPHANIE
RILEY,

      Defendants.

CAUSE NO. 3:25cv817 DRL-SJF

OPINION AND ORDER

Kelvin Wayne Dixon, a prisoner without a lawyer, was granted leave to proceed on several claims relating to his post-cancer and other medical care at Miami Correctional Facility, including, as relevant here, a claim against Centurion Health Services for an allegedly constitutionally deficient system for dispensing and renewing medications; against Nurse Practitioner Danielle Hamlin for denying him a prescription for Bengay or other adequate treatment for his muscle pain and cramps, and against NP Hamlin and Dr. Kristin Partain for denying him a pre-renal or renal diet to address alleged kidney damage. ECF 16. He is also proceeding on a claim against the Warden of Miami for injunctive relief related to his ongoing need for medical care regarding adequate medication administration, medical care for muscle pain and cramps, and medical care for kidney damage to the extent required by the Eighth Amendment. *Id.* Mr. Dixon moves for a preliminary injunction, seeking provision of adequate administration of his

medication, medical care for his alleged kidney damage, and medical care for his muscle pain and cramps. ECF 12. The Warden filed a response, ECF 39, and the time has expired for Mr. Dixon to file a reply. *See* N.D. Ind. L.R. 7-1(d)(3).

In 2023, Mr. Dixon was diagnosed with a gastrointestinal stromal tumor (GIST) ECF 39-11 at 2. After a year taking the cancer drug, Imatinib, to shrink the tumor, the tumor was surgically removed in July 2024, following which Mr. Dixon was transferred to Miami. ECF 39-7 at 96; ECF 39-8 at 143; ECF 39-10 at 173. Mr. Dixon continues to take Imatinib, and his oncologist has ordered that he receive a CT scan and follow-up visit every three months. ECF 39-4 at 65-68.

Mr. Dixon experiences muscle pain and cramps as a side effect of Imatinib and is prescribed the muscle relaxant, cyclobenzaprine (Flexeril) to manage the cramps. ECF 39-8 at 138. Flexeril is a non-formulary drug and requires special approval when it is prescribed. *Id.* Another possible side effect of Imatinib is kidney damage. At various points during his treatment, Mr. Dixon was placed on a special diet, Renal Pre-Dialysis, that restricts protein; but when he filed this complaint, he was not on a medical diet. ECF 39-5 at 5.

Mr. Dixon alleges that the medical staff at Miami are not following his oncologist's recommendation that he be placed on a renal diet. The record shows that Mr. Dixon had been prescribed a Renal Pre-Dialysis (Restricted Protein) diet on August 13, 2024, valid through February 13, 2025. ECF 39-7 at 130. Two months later, on October 30, 2024, Mr. Dixon expressed worry that his kidneys were failing, and NP Hamlin told him that his

2

kidney function had significantly improved and his glomerular filtration rate (GFR), measuring kidney function, had increased to 55, up from 42 in August. *Id.* at 27.

By August 2025, Mr. Dixon was no longer prescribed a special diet. NP Hamlin explained in a medical summary from August 5, 2025, that Mr. Dixon had been seen eating food that was not on his prescribed diet, including beans and hot dogs, and his medical diet would not be renewed. ECF 39-4 at 53. At a September 23, 2025, medical visit, NP Hamlin reviewed the oncologist's recommendation for a renal diet, and she determined a special diet was unnecessary because Mr. Dixon's kidney function was normal. ECF 39-5 at 17. At an October 1, 2025 medical visit, NP Hamlin noted that "[t]he oncologist documents that his CKD [chronic kidney disease] is mild and stable, which I agree with." *Id.* at 21. As a result, NP Hamlin concluded a Renal Pre-Dialysis (restricted protein) diet was not a medical necessity. *Id.* Further, she concluded that the Renal Pre-Dialysis diet restricted other nutrients, and those restrictions could have a detrimental impact on Mr. Dixon's health—a risk she deemed unnecessary with only mild CKD. *Id.* She pulled his commissary report for the last twelve months and noted that he had ordered a significant amount of food that would not meet the Renal Pre-Dialysis diet that he requested. *Id.* at 22.

At an October 21, 2025, medical visit, APN Kimberly Myers addressed Mr. Dixon's request for a Renal Pre-Dialysis diet, and told him that he did not qualify for one because his GFR was 73, and he would need a GFR of below 35 in order to qualify. ECF 39-5 at 36. At a December 12, 2025 medical visit, APN Myers again told him that he did not meet the requirement for a Renal Pre-Dialysis diet because his GFR was normal. *Id.* at 46. At a

December 30, 2025 visit following an oncologist visit, APN Myers was consulted about the oncologist's recommendation to start Renal Diet, and she stated that Mr. Dixon's numbers were too good to qualify for a Renal Diet at this time. *Id.* at 59. On February 12, 2026, a Renal Dialysis (Increased Protein) diet was ordered, valid through August 12, 2026. *Id.* at 66. The reason for the medical diet is not in the record.

Mr. Dixon began taking Imatinib before the surgery, while he was at Indiana State Prison. ECF 39-10 at 173. He was prescribed Flexeril and Bengay for the muscle cramps and pain he experienced as side effects. ECF 39-9 at 48. After his transfer to Miami, the providers continued the Flexeril prescription but declined to prescribe him Bengay, a non-formulary drug. ECF 39-6 at 149-50. After a June 2025 visit with his oncologist, Mr. Dixon returned with a recommendation that he be prescribed Bengay for muscle pain. ECF 39-6 at 70-71. NP Hamlin advised him to purchase the muscle rub from commissary for sore muscles and told him she is not prescribing him Bengay, which is non-formulary and would require a formulary exception request, because muscle rub is available from commissary. *Id.* at 72. She told Mr. Dixon that he was seeing the oncologist for GIST tumor surveillance, not for muscle pain. *Id.*

After a September 2025 oncologist visit, the oncologist again recommended Bengay for cramps. ECF 39-5 at 17. NP Hamlin told Mr. Dixon to purchase muscle rub from commissary, and he refused, saying that the commissary cream didn't work. ECF 39-5 at 21. She interpreted the oncologist's Bengay recommendation as based on Mr. Dixon's stated preferences, not on a medical necessity. *Id.* His commissary report showed that Mr. Dixon had not purchased muscle rub in the last twelve months. *Id.* at 22.

4

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of [his] case." *Id.* at 763 (quotations omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued."

5

*Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and quotations omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Because Mr. Dixon's claims relate to the denial of medical care, they are governed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). In plain terms, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

The court will assume that Mr. Dixon's kidney function and muscle cramps present a substantial risk of serious harm. However, he has not shown he is likely to succeed on the merits of a claim that the medical professionals' treatment decisions are grossly inadequate. The record reflects that his providers have exercised reasoned

medical judgment in determining whether a special diet was needed and the best way to manage the muscle pain he experiences. The fact that other providers have made different treatment decisions does not mean that these decisions fall below constitutional standards. *Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008). ("There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field."). And, though failing to follow the treatment recommendations of specialists can, in some cases, fall below constitutional standards, here the oncologist's specialty lies in treating cancer, not muscle pain. The prison's medical providers are entitled to disagree with her recommendation on the best way to treat Mr. Dixon's pain. *See Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("We routinely have rejected claims, however, where a prisoner's claim is based on a preference for one medication over another unless there is evidence of a *substantial* departure from acceptable professional judgment." (emphasis in original)).

As for the remaining issue of the administration of Mr. Dixon's medication, he alleges that he often goes without Flexeril and medications he takes for other chronic conditions because his prescriptions are not timely renewed. The Warden does not explicitly address this issue in his response. But it is evident from the voluminous medical record provided to the court that Mr. Dixon is largely getting all his medications as prescribed on a daily basis, *see* ECF 39-1 at 11-17, 29-30, and he has access to medical providers to address urgent medical needs. *See Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025) (in assessing the constitutional adequacy of care, court must "look at the totality of an inmate's medical care"). And so, even assuming there are moments in which

7

Mr. Dixon is without his medication, his ability to access treatment in the event the lack of medication causes problems weighs against finding that he has shown the irreparable harm necessary for a preliminary injunction. The Warden and staff would be wise not permit this to persist absent legitimate penological interests.

In view of the present record, Mr. Dixon has not demonstrated a likelihood of success in proving that he is receiving constitutionally inadequate medical care for kidney damage or muscle pain and cramps. He also has not shown that he will be irreparably injured if he is not granted emergency relief to address gaps in medication while this case is pending. He has not demonstrated an entitlement to the extraordinary remedy of a preliminary injunction.

For these reasons, the court DENIES the motion for a preliminary injunction (ECF 12).

SO ORDERED.

August 4, 2026                                  _s/ Damon R. Leichty_____
                                                Judge, United States District Court